## Case No. 3,855.
### DEXTER v. ARNOLD et al.
[3 Mason, 284.][1]

Circuit Court, D. Rhode Island. Nov. Term, 1823.

ADMINISTRATORS — LIABILITY FOR INTEREST — MORTGAGES—NEW ASSETS — LIMITATION OF ACTIONS—PARTNERSHIP.

1. An administrator is not liable to pay interest upon assets in his hands, unless under special circumstances.

2. Neither is a partner on partnership accounts, before settlement and balance struck.

[Cited in Johnson v. Hartshorne, 52 N. Y. 178.]

3. An administrator, who is also mortgagee of the real estate of his intestate, in his own right, is not liable to account as administrator for the money which he receives upon the sale of such estate, as mortgagee, although he sells with general warranty.

4. Such sale does not bar the equity of redemption of the heirs.

5. Where an estate is insolvent, and distribution of the assets is decreed under the laws of Rhode Island, and afterwards new assets come into the hands of the administrator, more than sufficient to pay all the debts, a suit will lie against the administrator for payment, in behalf of the creditors, notwithstanding the statute of limitations precludes an original suit against the administrator; for the new assets are a trust fund for the creditors, and the heirs can claim distribution only after all the debts are paid.

Bill in equity [by Edward Dexter against Thomas Arnold and another]. The substance of the bill was as follows: Jonathan Arnold died in 1806, intestate, leaving his brother, the defendant, Thomas Arnold, and his sister, Marcy Dexter, and sundry other persons, his heirs at law. Afterwards, the defendant, Thomas Arnold, in March, 1807, took administration on the estate of Jonathan Arnold. Marcy Dexter died in 1817, having by her will constituted the plaintiff and one Stephen Dexter trustees of the residue of her estate in trust for the use and maintenance of her daughter, Susannah Dexter, during her life, and as to what remained at her death, one half to the children of the plaintiff, and the other half to the children of the said Stephen Dexter, who should be then living. The said Susannah died in 1820. The will was duly proved by the trustees, who were also executors. The bill charges, that the defendant, Thomas Arnold, as administrator of Jonathan's estate, received large sums of money; that he was in partnership with Jonathan, and owed his estate large sums on partnership account; and particularly charges the receipt of more than 20,000 dollars on Mississippi stock held by Jonathan, which was paid by the United States to the administrator. It further charges collusion between the co-trustee, Stephen Dexter, and the defendant, Thomas Arnold, prays an account and decree of distribution of the portion of the intestate's estate, which belonged to Mary Arnold, as one of the heirs, &c., &c.

[1] [Reported by William P. Mason, Esq.]

Upon the coming in of the answers, it was agreed by the counsel on both sides, that there must be a reference to a master, to take the accounts of the defendant, Thomas Arnold, as copartner and administrator. The other defendant denied all confederacy and collusion; but as to all other facts stated in the bill, affirmed it generally. The cause was set down for a hearing upon the bill and answers, at November term, 1822, and by consent of the parties an interlocutory decree was then made, "that an account be taken by a master of all the property, estate, and effects of Jonathan Arnold, which has been sold, disposed of, or possessed, or received by the said Thomas, or by any other person or persons, by the order of the said Thomas, or for his use; and of the debts of the said intestate, and funeral expenses, which the said Thomas hath paid, or which remain unpaid, calculating interest on such of said debts as carry interest from the time they ought to have been paid, and the sum of money he paid for such debts; that the stated accounts mentioned in the said Thomas's answer, between him and the said intestate, ought to be opened, so far as that the plaintiff shall be at liberty to surcharge and falsify the same, but in all other respects to be held valid: that it be referred to a master, to take a general account of all other dealings and transactions, not included in the said accounts between the said Thomas and the said intestate; in the taking of which the master is to make all just allowances. And for the better taking the same account, the said Thomas is to be examined upon interrogatories, and to produce all books, and papers, and letters, in his custody, or power, relating thereto, upon oath before the said master, as the said master shall direct. And in stating said account, the said master is directed, if found proper and necessary by him, to state an interest account between the said Thomas and the said intestate." The parties to be at liberty to apply to the court as occasion shall require.

The master made his report; upon the coming in of which, exceptions were filed on the part of the plaintiff, and afterwards argued by—

Snow & Searle, for plaintiff.

Bridgham & Whipple, for defendant, Arnold.

STORY, Circuit Justice. It is unnecessary to enter farther into the merits of this cause than the exceptions taken to the master's report require. The first exception is founded on the following facts: The intestate, Jonathan Arnold, in 1793, mortgaged to the defendant, Thomas Arnold, his interest (one third part) in a farm, called the "Paget Farm," for £850. Of this sum £100 was paid in his lifetime; and after his decease in June, 1807, the mortgagee (then being administrator of the estate) sold the estate and gave an absolute deed with warranty, for the sum of $6403, which exceeded the sum then due on the mortgage, computing simple interest thereon, by about $3449, which balance the plaintiff contends ought to be carried to the credit of the intestate's estate. The reason assigned for this proceeding by the mortgagee is, that he could not otherwise dispose of the estate, and the sum received by him was in his character as mortgagee, and not as administrator, and was the amount of the principal due him, and compound interest, that having been agreed by the intestate to be allowed him in consideration of his forbearance to enforce the mortgage after the money had become due. And he contends, that the equity of redemption of the heirs has not been and could not be extinguished by such sale. The master, under these circumstances, disallowed the claim of the plaintiff for the balance. The question is, whether he was right in this disallowance. My opinion is, that he was right. The mortgagee was not precluded by his character, as administrator, from disposing of his mortgage in any manner he might deem best. If, under the belief, that the estate would not be redeemed, or that the heirs would never disturb the sale, he chose to convey the title with a general warranty, it was at his own peril. He did not thereby prejudice any right of the heirs to redeem, if they thought it for their interest. But the truth is, that the estate was then insolvent, and nothing but the very late remuneration under the act of congress to the holders of Mississippi stock would have given it solvency. If the creditors had chosen to redeem, they were not precluded by the sale from applying any proper funds for this purpose. But the administrator was not bound to advance his own funds; and no application appears to have been made by them to him requiring him to redeem. The money received was as mortgagee, and not as administrator; and it cannot escape notice that a part of the consideration was his general warranty. He holds the money then for his own use, and not in trust for the heirs or creditors. He has interfered with none of their rights, and he is not bound to yield any of his own. The mortgage has never been foreclosed; nor was it extinguished by the sale. If the heirs have any remedy against the defendant, it is in his character as mortgagee, and not as administrator. They cannot require him to account for money, as administrator, which he received in his own right. It never constituted any part of the intestate's estate.

The second exception is the disallowance by the master of a sum which was drawn out of the Providence Bank by the defendant, as agent of the intestate, for which he gave the intestate's note, and which it is contended ought to be charged personally against the defendant. There is no evidence to prove that the money so drawn was not applied to the use of the intestate. The de-

fendant was then acting as his agent, and the natural presumption, taking all the facts together, is, that the note was given for the amount received for the intestate, by his agent, because the money was applied to the use of the intestate.

The third exception is, that the master has refused to allow interest upon the amount of the errors and omissions in the partnership accounts, settled between the defendant, Arnold, and the intestate, which have been admitted or proved, under the liberty to surcharge and falsify. The master disallowed the interest, because he was of opinion, that from the course of business between the parties and their proceedings in settling their accounts, no general interest account was ever contemplated between them. There is no pretence, that the accounts between the parties were fraudulently or designedly wrong; or that any undue advantage was taken on either side. On the contrary, there was entire good faith and confidence between them; and the errors and omissions were unintentional and by mistake. In such a case, where there has been no habit of charging interest between the parties, and there have been mistakes, as much attributable to negligence on one side as the other, I can perceive no ground for an allowance of interest before the ascertainment of the errors. This rule would apply as between third persons; but it applies with greater force to the case of partners. Interest is not allowed upon partnership accounts generally, until after a balance is struck on a settlement between the partners; unless the parties have otherwise agreed, or acted in their partnership concerns.

The fourth exception is to the allowance of $1364.09 by the master, in favour of the defendant, as compensation for his services and expenses, as administrator of the intestate's estate. The allowance by the master is quite liberal; and I do not mean to suggest, that it is unduly so. But the direct effect of the full allowance is, that the plaintiff will be entitled to recover a little less than $500, so that he will be deprived of his whole costs. There are several ways presented by the report, by which the plaintiff might fairly be entitled to recover to the extent of $500. But it appears to me, looking to all the circumstances of the case, that it would be inequitable to make so liberal an allowance, in a case of mere discretion, as necessarily to throw the whole costs on the plaintiff. I am not satisfied, that my duty requires it; and though the account might be reformed in some few other particulars so as to meet the justice of the case, I prefer to reduce the compensation in some degree, and thus accomplish the same object in an unexceptionable manner. I shall deduct from this item $364.09.

The fifth exception is, that the master has not charged the administrator with interest upon all the sums of money remaining in his hands during the time he has retained the same. There are no particular circumstances presented by this case, which distinguish it from ordinary administrations. Courts of equity do not, as of course, charge executors and administrators with interest upon assets in their hands. There must be some special circumstances to warrant it, such as the executor's having used the money for his own purposes, or having put it out at interest and received interest, or having been guilty of fraudulent misconduct, or having, for a long time, unconscientiously retained the money from the heirs or other persons entitled to it. See Newton v. Bennet, 1 Brown, Ch. 359; Perkins v. Bayntun, Id. 375; Foster v. Foster, 2 Brown, Ch. 616; Ratcliffe v. Graves, 1 Vern. 196; Lowson v. Copeland, 2 Brown, Ch. 156; Longmore v. Broom, 7 Ves. 124; Piety v. Stace, 4 Ves. 620; 3 Toll. Ex'rs, c. 10, § 4, p. 480; Wyman v. Hubbard, 13 Mass. 232. See, also, Stearns v. Brown, 1 Pick. 530. I do not enumerate these, as all the cases, but only as examples. Lord Hardwicke, in Adams v. Gale, 2 Atk. 106, seems to have thought, that an executor may make use of money, which is perpetually coming in by assets of the testator, and turn it to his own advantage; and in Child v. Gibson, Id. 603. he said, "There never was a case in the court, where interest was charged upon an executor, who makes use of assets come to his hands in the way of his trade." But this doctrine, if not overruled, has been greatly qualified and limited in later times. In Wilkins v. Hunt, Id. 151, Lord Hardwicke said, (which, I believe, has never been contradicted,) that it is not a rule in all cases, that an administrator should be charged with interest on account of personal estate. In Littlehales v. Gascoyne, 3 Brown, Ch. 73, Lord Thurlow laid down the doctrine, that an executor's paying or not paying interest depended on its being necessary for him to keep the money to answer the exigencies of the testator's affairs or not; but where the money was held longer than was necessary, he must answer interest; and he subsequently affirmed the same doctrine in Franklin v. Frith, Id. 433. Without undertaking to decide upon the extent of the application of this doctrine, and what are the reasonable qualifications, which ought to belong to it, I may be permitted to say, that there are no special facts warranting the court to decree interest in the present case. The estate was originally insolvent, and it does not appear, that the administrator has ever improperly withheld the assets. If any persons were injured by such delay, they were the creditors, and not the heirs. Since the receipt of the funds from the Mississippi stock, no delay has intervened, which may not be reasonably accounted for.

The last exception is, that a sum equal to the outstanding balances due to the creditors of the intestate has been allowed to be retained by the administrator for the purpose of discharging these debts. The ground of

this objection is, that the creditors are no longer entitled to claim their balances, the statute of limitations having barred their rights. By the laws of Rhode Island, actions against executors and administrators, must be brought within three years from the time of the probate and administration. Where the estate is declared insolvent, (as was the present case,) the claims of creditors are to be proved before commissioners, except under special circumstances, and the assets are to be divided among those, whose debts are legally established. Laws R. I. (Dig. 1798) p. 300, § 17. There is a farther proposition, that if the debts are not so established, the creditor is for ever barred of his action against the executor or administrator, unless these are assets beyond the amount of the claims allowed by the commissioners, or otherwise legalized. Laws R. I. (Dig. 1798) pp. 314, 315. All the debts now in controversy are upon claims, which have been allowed, and are the balances beyond the dividends received. They do not fall therefore within the terms of the latter provision of the act; but they are clearly within a like, if not a stronger, equity. Undoubtedly no suit would have lain against the administrator before the new assets were received, for he had made a complete distribution of the funds decreed according to the local laws. He might therefore have pleaded plene administravit, or the statute of limitations. But surely it can never have been the intention of the legislature, that if assets sufficient to discharge all the debts after such distribution come to the hands of the administrator, the creditors are not to be paid. They are guilty of no laches, and have no demand against the administrator, until after the new assets are received, whatever may be the lapse of time. In the view of a court of equity, such new assets are a trust fund for the benefit of the creditors; and when they are satisfied, for the benefit of the heirs of the intestate. It is not a case, to which the general statute of limitations is designed to apply. That statute does not, unless under special circumstances, attach upon trusts. The limitation of three years in the Rhode Island act, principally, though perhaps not exclusively, contemplated cases of solvent estates. A mode of proceeding essentially different is prescribed in cases of insolvency. Where the claims of creditors are proved under proceedings upon insolvent estates, they attach upon all the real and personal assets of the intestate, and according to the very terms of the act, "the same shall be distributed to and among all the creditors in proportion to the sums to them respectively owing, so far as the said estate shall extend." Whatever assets then come into the hands of the administrator are distributable among the creditors, whose claims are proved, until all are paid; and the administrator holds them in trust for such purpose. This exposition of the statute appears to me consistent with its true import, and with common sense and

common justice. I have no doubt therefore, that the master was right in allowing the administrator to retain the balance still due to the creditors in his hands, and that the creditors have a right to resort to him for the discharge of them. The exceptions are therefore overruled, excepting the fourth; and as to this, the decree is to be reformed in the manner already suggested. The costs are to be borne in equal moieties by the parties. Report confirmed and decree accordingly.

NOTE. The decree ordered the administrator to pay to the plaintiff, as trustee, for the uses stated in the bill, one moiety of the sum due to him and Stephen Dexter, as trustees &c., with interest from the time of the coming in of the master's report to the confirmation thereof. The report having found a balance due to the administrator from Stephen Dexter, it was further ordered, that the moiety, so far as it had not been passed to his (Stephen's) credit in account, should be paid to him, or recouped from the balance by an acknowledgment of record by the administrator. It was farther ordered, that the sum retained for the creditors be paid to them by the administrator; and if not distributed within a year, the plaintiff to be at liberty to apply for a farther distribution. The costs to be borne in moieties by the plaintiff and defendants.

[NOTE. A petition for leave to file a bill of review was denied at the June term, 1829. See Case No. 3,856.]