JOHN T. CLARK, APPELLANT, v. WILLIAM WARDEN, APPELLEE.

Interest: Partnership. In the spring of 1874 C. was the owner of a livery stable and stock on 9th street, Omaha. He also bought a lot on 15th and Farnham streets for the purpose of erecting a new stable thereon; had paid $5,000 on such purchase, and given a mortgage on the said lot for $7,000, the balance of the purchase money. On the first of May of said year he entered into partnership with W. The livery, stock, and interest of C. in the lot on 15th and Farnham streets were estimated at $19,000. W. was to put in an equal amount. He, W., was to go on and put up a new building for their business on the said lot, furnishing the means therefor; and if the cost thereof should fall short of the amount put in by C., then the amount was to be made up in some other way. W. completed the erection of the building in September of that year, at a cost of $13,755.99. The amounts severally drawn out of the business by the plaintiff and by the defendant in each of the four and a half years of the partnership were nearly equal; but during such time the defendant from time to time paid in money to the partnership in excess of that paid in during the same time by the plaintiff; so that at the time of the dissolution the deficiency of defendant amounted only to $594.42. No demand was ever made on defendant by plaintiff that he make good his deficiency, nor did the business of the firm require the same. *Held*, that the plaintiff was not entitled to interest on such deficiency or any part thereof.

APPEAL from a decree rendered by SAVAGE, J., in the district court of Douglas county. There is a sufficient statement of the case in the opinion.

*E. Wakeley*, for appellant, cited: Gen. Stat., 446. *Morris v. Allen*, 14 N. J. Eq., 44. *Reynolds v. Mardis*, 17 Ala., 32. *Hodges v. Parker*, 17 Vt., 242. *Stoughton v. Lynch*, 1 Johns. Ch., 467.

*George E. Pritchett*, for appellee, cited: *Desha v. Smith*, 20 Ala., 747. *Hollister v. Barkley*, 11 New Hamp., 501. *Honore v. Colmesnil*, 1 J. J., Marshall, 541. S. C., 7 Dana, 199. *Lee v. Lashbrooke*, 8 Dana, 214. Story on Part., Sec. 182, Note 3.

COBB, J.

The only question in this case arises upon that part of the decree which disallows interest to the plaintiff on the sum contributed to the firm by him in excess of that contributed by the defendant.

Upon first reading the authorities cited by counsel on either side at the argument, there would seem to be some conflict on this question of the right of a partner to interest on funds by him contributed to the capital of the firm, in excess of those contributed by his equal co-partner and used in the co-partnership business during the existence of the partnership. But upon a close examination and an analysis of the cases nearly all apparent conflict disappears.

In the case at bar there were no written articles of co-partnership, nor is the proof as to the terms of the verbal contract quite as ample as might be. It seems to have been rather the outgrowth of several different conversations than one definite and connected contract. The plaintiff was engaged in carrying on a

livery business on Ninth street, in the city of Omaha, where he had a 'stock of horses, carriages, harness, etc. He had also bought a lot up town for the pur-. pose of building a stable on it, and moving his business thereto. On this lot he had paid $5000, and given a mortgage for $7500, the balance of the purchase money. By the terms of the co-partnership this property, the livery stock, which was estimated at $14,000, and the said lot at $5000, making $19,000, was put into the partnership. It was the contract that the plaintiff and defendant were to be equal partners. At the trial before the referee plaintiff was a witness in his own behalf. His counsel put the following questions to him:

Q. What was the agreement as to the amount of property and capital you should put in and Warden should put in?

A. I turned in my stock for so much, and he was to put in so much.

Q. You refer to your livery stock?

A. Yes, sir.

Q. Was there any agreement as to the amount at which it should be turned in?

A. Yes, sir; at $14,000.

Q. What else was you to put into the concern?

A. A lot on Fifteenth and Farnham.

Q. At what price was it to be put in?

A. Twelve thousand dollars; just what I paid for it.

Q. You were to pay $12,000?

A. Yes, sir.

Q. And had paid $5,000?

A. Yes, sir.

Q. You put in that lot subject to the incumbrance?

A. Yes, sir, from the time it was bought.

Q. Then you had $5,000 interest in the lot?

A.   Yes, sir.

Q.   That made $19,000 with the livery stock?

A.   Yes, sir.

Q.   In the agreement of partnership was there any agreement made as to the capital stock put in by each?

A.   He was to put in what I did; the same amount, and be an equal partner.

Q.   State what Mr. Warden agreed to put in, and what he did put in.

A.   I do not know just what he did put in.   I have had no settlement with him.

Q.   In what form was he to put in his capital?

A.   He was to build that stable and was to put up a repository and have buggies to sell.   He said he would put up that barn.

Q.   And put in the rest some other way?

A.   Yes, sir.

Q.   State if Mr. Warden did build the barn?

A.   Yes, sir.

Q.   What else, if anything, did he put into the concern at the time, or soon after the time when you went into the partnership?

A.   He gave me fourteen hundred dollars to buy horses, and we fetched them back and sold them or traded them off, on the building.

Q.   What else?

A.   That is the only money I remember of getting.

I have quoted this testimony at considerable length for the purpose of showing the rather indefinite character of the agreement as to the time when the amount of capital, to be put in by the defendant, was to be made equal to that put in by the plaintiff in livery stock and the city lot, and for the further purpose of showing the entire absence of evidence that it was in the mind of either of the parties to the agreement to

provide for the payment of interest on any sum which either might be in arrear as compared to that put in by his co-partner. From the whole case it is apparent that the chief if not the only reason which impelled the plaintiff to take in a partner was to obtain means for the erection of the new building on 15th and Farnham streets. And having secured this by the agreement of the defendant to go on and erect the building, he does not seem to have cared to hold him strictly to time, for paying into the firm whatever sum might still be required to make his part equal to that put in by the plaintiff; nor does it seem that it was known by either party until long after the completion and occupancy of the new building whether the cost of the same would not equal the amount put into the firm by the plaintiff.

It appears as well from the evidence as from the report of the referee that the said new building was completed by defendant some time in September following the date of the co-partnership, May 1, 1874, at a cost of $13,755.99—being nearly five thousand dollars less than the amount contributed to the partnership fund by the plaintiff; but that so little importance was attached to such deficiency that plaintiff did not, until a comparatively recent period, even inquire the cost of said building; and it appears probable that he was quite surprised to learn that such cost did not nearly equal the sum contributed to said business by him.

It appears from the evidence and the report of the referee that the amounts severally drawn out of the business by the plaintiff and by the defendant, each of the four and a half years of the partnership, have been nearly equal, but that during such time the defendant has from time to time paid in money considerably in excess of that paid in during the same time by the

plaintiff, so that at the time of the commencement of this action the deficiency of the defendant amounted to only $594.42.

Mr. Justice Story says in *Dexter v. Arnold et al.*, 3 Mason, 284: "Interest is not allowed upon partnership accounts generally until after a balance is struck, or a balance is struck on a settlement between the partners, unless the parties have otherwise agreed or acted in their partnership concerns." This I understand to be the true rule, and although some of the cases seem to recognize a different one, yet I think that upon a close examination it will be found that where interest has been allowed the cases have been controlled by special facts not presented by the case at bar.

The case of *Stoughton v. Lynch* was twice before the court of chancery of the state of New York. 1 Johns. Ch., 467. 2 Id., 210. In this case there were articles of co-partnership in writing, entered into by the parties then residing in the United Netherlands, by which they agreed to establish a trading house in New York. The plaintiff was to proceed to New York for that purpose as soon as possible after the 1st day of May ensuing. The partnership was to continue for seven years after the plaintiff arrived in New York, and then six months after notice of separation. The plaintiff was to be the active partner and take the laboring oar, and the profits were to be equally divided. The capital was to be 7,500 pounds sterling, of which the defendant was to furnish 5,000 pounds, and the plaintiff the residue, and to pay an interest of five per cent on his deficiency of capital, *the capital and profits to remain in the house* and be employed for the benefit of the concern during the partnership, withdrawing such part only as may be necessary for private expenses. * * A fair balance of the books of the firm was to be

made, signed, and approved by the parties annually. Neither party was to do business at New York on their private account during the partnership, nor lend any of the capital stock, nor enter into any acceptances for account of the partnership without mutual consent, each party doing his best to promote the advantage of the company. * * The partnership was dissolved in July, 1795.

The decretal order of reference of the 6th of July, 1814, to a master to take and state an account between the parties, directed the defendant to be charged with interest upon all such sums of money as he may have drawn out of the co-partnership funds beyond the amount necessary for his private expenses.

The master in his report stated that the defendant claimed, under the head of charges necessary for his private expenses: (1) 1200 dollars for his family expenses, at *Bruges*, from the sixth October, 1783—the day on which the plaintiff commenced business at New York—to the first of April, 1784; (2) 500 dollars expenses of moving from Bruges to London in April, 1784; (3) 5,000 dollars, expenses in London from April 1, 1784, to the first of April, 1785; (4) 1,500 dollars for expenses from that day until the defendant's arrival in New York, including the passage; (5) 5,610 dollars for plate, harpsichord, carriage and horses, and furnishing house in New York; (6) 1,260 dollars annually for rent of a house in New York from April 1, 1788, to third of July, 1795; (7) 1,050 dollars annual expenses of educating four children from 1792 to July 3, 1795; all of which charges were disallowed by the master. On exceptions to the report the chancellor (Kent) said: " The articles of co-partnership intended to preserve, in a state of progressive accumulation, the funds of the house, and the clause upon which the question before me has arisen, must be taken strictly.

This is evidently the sense and spirit of the agreement. It is expressly stipulated that the capital *and profits* of the company were to *remain* in the house and be employed for the benefit of the concern during the partnership, with this special exception—that such part only as might be *necessary* for *private expenses.*    *    *    *    The least that I could do in this case was to make him pay interest on all moneys withdrawn beyond the private necessity expressed in the contract."

It will thus be seen that the contract or articles of co-partnership controlled this case, and that it sheds but little light upon a case like the one at bar.

The case of *Reynolds et al. v. The Heirs and Adms. of Mardis,* 17 Ala., 32, is also cited by appellant. In that case it appears that many years before the date of the decision " Walker Reynolds and Samuel W. Mardis entered into an agreement which made them partners, for the purpose of buying and selling Indian lands situated in the Coosa and Talapoosa land district. Each partner was to furnish an equal amount of capital, and after the purchases were made and the land sold the net profits, after refunding the capital, were to be equally divided between them. Mardis was to make purchases from the Indians, either by himself or through others. Under this agreement Reynolds advanced a considerable amount of money to Mardis, who purchased a number of tracts of land. Before these lands were sold Mardis died, and the object of the cross-bill filed by Reynolds against his heirs and representatives was to ascertain the lands purchased, to have them sold, and the accounts of the partnership settled. It became necessary to ascertain how much money each partner had advanced in the purchase of the lands, and a reference was made to the register of the court for this purpose, who in the year 1844 reported that there had been invested in the

purchase of lands $13,425.55; that of this sum Rey-
nolds had advanced $7,563.68 and Mardis the sum of
$5,861.87½, and consequently that Reynolds had ad-
vanced $1,701.80½ more than Mardis.    Reynolds
claimed that interest should be allowed him in the
settlement upon the sum which had been advanced by
him, over and above his proportionate share according
to the terms of the agreement."

The court allowed him interest on one half of the
said sum.    Although the court treats this as a case of
partnership it certainly was not such in a general
sense, but was more in the nature of a joint invest-
ment of money to await natural increase and enhance-
ment of the value of real estate.    The parties agreed
to make certain purchases of Indian lands, to be after-
wards sold on speculation.    Mardis, who was to be
the active business man, received from Reynolds the
amount of money above stated, and agreed to put an
equal amount of his own money with it and invest
the same in lands.    This he to some extent failed to
do, having put into the speculation considerably more
of his partner's money than he did of his own.    It
seems that these investments, or a portion of them,
remained for many years before all the lands were
sold and the venture wound up. · The whole profits of
this business, actual or anticipated, were very much
in the nature of interest on money.    The work of
making the investments, all of which was done by
Mardis, does not seem to have been regarded as of
any value, at least no notice is taken of it in the case.
This money should have been regarded as invested,
rather than as being used in a partnership business in
any proper sense.    It was manifestly within the spirit
of the original agreement that the party who fur-
nished an excess of the capital should either draw in-
terest on one-half of such excess or be entitled to a

proportionate interest in the venture above that of the other party. In this respect this case is clearly distinguishable from the case at bar.

The case of *Morris v. Allen*, 14 New Jersey Equity, 44, is where an engineer and a broker entered into a joint contract with a railroad company to build a railroad, " the complainant to contribute his credit, skill, and financial ability as a railroad contractor and negotiator of securities, and to have immediate charge of the finances of the firm; the defendant to contribute his skill and experience as an engineer, and to have the entire control and superintendence of the road. The business of the firm was the construction and equipment of a railroad, the contract price of which was $238,286; of this sum $113,000 was to be paid in bonds of the company, payable in ten or fifteen years, $50,000 in the capital stock of the company, which could produce no revenue and have no market value until the work was completed, and only $75,286 in cash. Payments were to be made on the monthly estimates as the work progressed. The firm had no capital, and of necessity they must have relied upon temporary loans and upon the sale of the bonds to furnish capital to conduct their operations. In June and in January and April, 1855, Morris was in advance to the firm over $90,000. This fact must have been known to Allen and acquiesced in by him."

The court allowed the plaintiff interest on these advances, but manifestly not upon the principle that they were advances of capital in excess of that advanced by his co-partner—for we have seen that the firm had no capital—but as temporary loans made by the plaintiff on his own credit, and used for the benefit of the firm.

The case of *Hodges v. Parker et al.*, 17. Vt., 242, where interest was allowed to the individual members

Clark v. Warden.

of the firm who had advanced money for the benefit of the firm, in an action brought to liquidate the concerns of the firm, is plainly distinguishable from the case at bar in this, that in that case there was no question as to whether either of the parties had failed to contribute his proper share of capital, but so far as can be gathered from the very meagre report, the parties had been engaged in buying and selling wool under the name of " The Wool Co." Some of the individual partners had advanced money in the nature of loans (as I understand it) to the company. Interest was, as I think, properly allowed on these advances, but not within the reason contended for by appellant in the case at bar.

Having already written at considerable length for the purpose of showing that those cases, which might seem to lay down the law different from the conclusions which I have come to, really do not, I deem it unnecessary to comment upon any of the cases cited by appellee further than to say that I think they fully sustain the position taken by him, and which the court is obliged to sustain.

The decree of the district court is therefore affirmed.

DECREE AFFIRMED.