ALLAN SMITH, Appellant, v. F. A. V. KNIGHT, Administratrix, et al., Appellees.

| 88 | 257 |
| 90 | 43 |
| 88 | 257 |
| ₉103 | 733 |
| 88 | 257 |
| 123 | 634 |
| 88 | 257 |
| 139 | 270 |

1. **Partnership**: RIGHT OF PARTNERS TO INTEREST ON EXCESS OF CAPITAL CONTRIBUTED: AGREEMENT WITHOUT CONSIDERATION. Where partners had conducted their business for fourteen years with no settlement of their accounts, and with no agreement that either should have interest upon the excess of capital furnished by him, and at the end of that time they entered into a written agreement reciting that it was the original understanding that each should furnish equal amounts of capital, and share equally the losses and profits, and providing that as soon as possible the books should be inspected, and the amount due each partner credited to him, and that, in ascertaining such amounts, interest should be allowed each partner on his just monthly balances from the time they first engaged in business, *held*, that so much of the agreement as provided for interest on monthly balances was without consideration, and could not be enforced; especially in an action in equity to settle the partnership affiairs, where it appeared that the allowance of such interest would have the inequitable effect of swelling a balance of eleven thousand dollars due one partner to a sum in excess of fifty thousand dollars.

2. ———: USE OF FIRM PROPERTY BY SURVIVING PARTNER: LIABILITY FOR RENT. Where upon the death of one partner the survivor took possession of a mill belonging to the firm, and used it for four years, and so conducted it that he could not make an accounting of the bus-

iness connected therewith to the representatives of the deceased partner, *held*, that he was properly charged with the reasonable rental value of the mill, and that he could not escape such liability on the ground that he had taken and held possession as surviving partner in the interest of the firm, and simply to close up its business.

3. ———: SETTLEMENT BY SURVIVING PARTNER: COMPENSATION. A surviving partner is not entitled to compensation for his services in settling up the affairs of the partnership, where there is nothing to show that one partner, because of excessive service, was to receive more than the other.

4. ———: ACTION FOR ACCOUNTING: JUDGMENT ON APPEAL. Where, in an action for the settlement of a partnership, the plaintiff alone appealed, and the supreme court, upon a trial *de novo*, found that a certain sum was erroneously charged by the district court to the plaintiff, but it also found that a greater sum was erroneously charged to the defendants, *held*, that, while the error against the defendants was no ground for a modification of the decree in favor of the defendants, because they had not appealed, yet it should be taken into account as showing that the plaintiff was not prejudiced by the erroneous charge against him, and was not entitled to a reversal on such ground.

*Appeal from Boone District Court.*—HON. S. M. WEAVER, Judge.

THURSDAY, MAY 18, 1893.

ACTION for a settlement of partnership accounts. From a decree entered by the district court, the plaintiff appeals.—*Affirmed.*

*Phillips & Day*, for appellant.

*Gatch, Connor & Weaver* and *R. F. Jordan*, for appellees.

GRANGER, J.—This case was once before in this court on appeal, and was reversed and remanded, because it had not received full consideration in the district court. The case was remanded with a suggestion that it demanded "the attention of a careful referee, who shall present fully the evidence, together with his findings of law and fact upon all questions arising

in the case." Thereafter the case was given to the
Honorable B. P. Birdsall as referee, and a sufficient
statement of the case will be found in his findings of
the facts, which, with some omissions, are as follows:

### "FINDINGS OF FACTS.

"*First.* That in the year 1869, D. B. Knight and
Allan Smith entered into an oral agreement for a
copartnership to erect a steam mill and elevator, and
to do the business of buying and grinding and selling
grain.   Under the agreement they were to be equal
partners, each furnishing an equal amount of capital,
and sharing equally the profits and losses.   No fixed
amount of capital stock was agreed upon.   They com-
menced the construction of a mill at Boone, Iowa, in
the fall of 1869, and completed it for operation about
May 1, 1870.  The books of the firm were opened about
the first day of May, 1870.   Prior to this time each of
the partners had kept an account of materials furnished
and labor and material paid for by him in the construc-
tion of the mill, and for moneys paid out for merchan-
dise on account of the firm.   About the first day of
May, 1870, each of the partners presented to the book-
keeper of the firm a statement of the amounts thus
paid by each for account of the firm, and each partner
was credited upon the books with the total amount of
his payments thus made as of date May 1, 1870; the
balance to the credit of D. B. Knight being sixteen
thousand, seven hundred and twenty-one dollars and
fifty cents, to Allan Smith was ten thousand and fifty-
four dollars and thirty-eight cents.   Thereafter each
partner was credited in his individual account with
merchandise and cash furnished or payments made on
account of the firm, and debited with all merchandise
and cash received.   No regular monthly balances were
kept of their accounts until after January 30, 1882.
No settlement of the partnership accounts has ever been
had.

"*Second.* D. B. Knight died on the twenty-fifth day of January, 1886. The balance to the credit of each partner, as shown by the books, on January 30, 1886, was as follows: D. B. Knight, eleven thousand, one hundred and sixty-six dollars and five cents; Allan Smith, eleven thousand, nine hundred and fifty-seven dollars and sixty-seven cents.

"*Third.* On the eleventh day of June, 1884, D. B. Knight and Allan Smith entered into the following contract in writing, to wit:

" 'Whereas, Dan B. Knight and Allan Smith have heretofore been engaged in business under the firm name of Knight & Smith, of Boone, Iowa; and whereas, said Knight and Smith engaged in business with the understanding that each should furnish equal amounts of money, and share equally the profits and losses of the business; and whereas, there has never been an inspection of the firm accounts, and it is probable that either Knight or Smith may at different times have had invested in their business an amount of money in excess of an equal one-half: Now it is hereby agreed by and between said Knight and Smith that as soon as possible after the date hereof the accounts and books of the said firm of Knight & Smith shall be inspected and corrected, and that the amount now justly due each partner, to wit, D. B. Knight and Allan Smith, shall· be credited to them individually on the books of said firm. That in calculating the amount now due said D. B. Knight and Allan Smith, interest shall be allowed on their just monthly balances from the time they first engaged in business up to this date, at the rate of interest said firm may have paid for money borrowed by said firm during the time above specified of the banks of Boone, Iowa. That interest from this date shall be allowed said D. B. Knight and said Allan Smith on their monthly balances at the rate of interest the said firm may hereafter pay for money borrowed by said

firm from the banks of Boone, Iowa. It is further agreed that neither partner shall be allowed interest hereafter on his monthly balances, when the total amount to the credit of such partner be in excess of $15,000, unless such interest be agreed to in writing. It is further agreed that neither Knight nor Smith shall at any time reduce the amount of his credit on the books of said firm to a sum less than $10,000 without the written consent of both said Knight and said Smith. Neither said Knight nor said Smith shall at any time use the firm name in any private business or speculation whatever. Witness our hands this eleventh day of June, 1884.

" 'D. B. KNIGHT,<br>" 'ALLAN SMITH.' "

"This contract was drawn by one Arch C. Smith, in the office of Knight & Smith, and in the presence of both the partners, and was there signed, and after its execution was placed in an envelope indorsed, '*Firm agreement, Knight & Smith. Private,*' and deposited in the firm safe, in the office of the firm; and I find that at the time of the execution of this contract D. B. Knight had sufficient mental capacity to comprehend and transact any ordinary business, and to make and enter into contracts, and that there was no fraud practiced by Smith in procuring the same. No settlement of the accounts of the partnership under this contract was ever made or entered upon.

"*Fourth.* D. B. Knight left surviving his wife, the defendant Fanny A. V. Knight, and two children, Harold Knight and Bertha Knight, as his heirs at law. In February, 1886, the said Fanny A. V. Knight was appointed administratrix of his estate, and is now acting in that capacity.

"*Fifth.* All the assets of the firm of Knight & Smith, personal and real, upon the death of Mr. Knight, were taken possession of by Allan Smith, as the surviv-

ing partner of the firm, and ever since that time have been under his management and control. The amount received by him, and the disposition of the same, is hereafter shown in stating his account as surviving partner.

"*Sixth.* Allan Smith, surviving partner, and the administratrix of D. B. Knight's estate, being unable to agree upon a settlement of the partnership accounts, the plaintiff on the ——— day of ———, 1886, commenced this action to wind up the partnership, and in his petition claims that the following items, appearing on the books prior to June 11, 1884, are erroneous, to wit."

The referee here specifies the items objected to, and makes specific findings as to each. Then follows:

"*Twenty-third.* With the foregoing corrections, I find the monthly balances of the partners would be shown in the exhibit following, which is made a part of this finding.

"*Twenty-fourth.* Without any correction in the books, the monthly balances would be as shown in the following exhibit, which is made a part of this finding."

Here follows, in parallel columns, a detailed statement of "monthly balances of D. B. Knight, as corrected, on the first of each month, and monthly balances of D. B. Knight, as on books, on the first of each month," from May, 1870, to February, 1886. Then, in the same manner, and for the same time, the balances of the plaintiff are presented. The referee then proceeds:

"*Twenty-fifth.* I find that the firm of Knight & Smith paid interest for money borrowed at the banks of Boone, Iowa, at the following rates, to wit: From May 1, 1870, to January 1, 1880, at the rate of fifteen per cent. per annum; from January 1, 1880, to February 1, 1886, at the rate of 10 per cent. per annum.

"*Twenty-sixth.* I find that, if interest be allowed on monthly balances, as provided by the contract set out in the third finding of facts, upon the accounts of the partners as corrected, the balance to the credit of Allan Smith on the first day of February, 1886, would be $14,733.20, and to D. B. Knight, $11,472.93; the credit allowed to Allan Smith upon the excess of his monthly balances on the foregoing basis being $3,102.43, and to D. B. Knight, $404.89. If interest be allowed, as provided by said contract, from June 1, 1884, to February 1, 1886, upon the excess of monthly balances, the balance to the credit of Allan Smith on February 1, 1886, would be $11,788.05, and to D. B. Knight, $11,068.04; the balances of Allan Smith being continuously from June 1, 1884, to February 1, 1886, in excess of those of D. B. Knight, and the amount credited to him as interest upon such excess during said time being $157.28.

"*Twenty-seventh.* At the dissolution of the firm by the death of Mr. Knight, Allan Smith, the surviving partner, took possession of all the assets of the firm. On January 25, 1886, there was on hand the sum of $4,800.47 in cash and in bank. There was on hand a large quantity of grain, flour, feed, and mill stuff, of the value in the aggregate of $6,148.45. Allan Smith, against the objection of the administratrix, continued the business in the firm name of Knight & Smith, up to August 31, 1886, when the merchandise on hand was charged over to one Col. William Smith, and the business carried on in his name for some time, when it was again transferred to the name of Allan Smith. No actual sale of the merchandise was made to William Smith at the time mentioned, but the transfer was in fact for the benefit of Allan Smith, and made for the purpose of separating his own from the firm business, and of creating a rest in the partnership accounts. No inventory of the personal property,

merchandise, etc., on hand on January 25, 1886, was made by the surviving partner, Allan Smith, and the merchandise on hand was mingled with new purchases and new products in the operation of the mill by Mr. Smith. On April 30, 1886, Allan Smith made an inventory of the property then on hand, which he entered upon the daybook, with the value thereof. Subsequently he caused to be erased the value attached."

This is followed by an extended itemized accounting. The referee then says:

"I find that substantially all the accounts due the firm were collected, and all liabilities liquidated, by the surviving partner, within eight months after the dissolution of the firm by the death of D. B. Knight, except the liability upon the mortgage debt to Arch C. Smith, which was paid in March, 1888. That during the eight months following the death of Mr. Knight it was necessary and proper for the surviving partner to retain and pay, at the expense of the firm, a bookkeeper, which he did do. I find that he should be allowed the sum of eight hundred dollars on his account, and so credit him. I find that Allan Smith has occupied and used the mill and elevator continuously since January 25, 1886, and enjoyed the benefit thereof. That the fair rental value and the reasonable value of the use thereof during said period, exclusive of repairs, has been the sum of one hundred and twenty-five dollars per month, amounting in the aggregate, to April 15, 1890, to the sum of six thousand, four hundred and thirty-seven dollars and fifty cents."

Following the findings of fact is a summarized "account of receipts and disbursements" by the plaintiff, with a debtor balance against him of ten thousand, forty-one dollars and sixty-seven cents. The referee then concludes with the following:

"FINDINGS OF LAW.

"*First.* That the contract between the partners, D. B. Knight and Allan Smith, made on the eleventh day of June, 1884, and set out in the third finding of facts herein, so far as the same provides for the allowance of interest upon the excess of monthly balances prior to its date, is without consideration, is inequitable, provides for usurious interest, and should not be enforced. That there should be allowed the plaintiff upon the excess of his monthly balances interest from the date of said contract, to wit, June 11, 1884, to January 25, 1886, at the rate of ten per cent.

"*Second.* That the accounts of the partners should be corrected in accordance with the findings of facts herein set forth.

"*Third.* That Allan Smith, as surviving partner, should account for the value of the merchandise on hand at the dissolution of the firm by the death of D. B. Knight on January 25, 1886, and for all moneys received by him on account of the firm from all sources, as shown by the finding of facts.

"*Fourth.* That he should be credited with all disbursements for account of the debts of the firm existing at the dissolution thereof, and for all taxes and insurance paid on the property, and all expenses on account of repairs, or incident to closing up the partnership business, as shown in the finding of facts herein set forth.

"*Fifth.* That he should account to the firm for the sum fixed in the finding of facts, as the reasonable rental value and value of the use of the firm property by him since January 25, 1886, and up to April 15, 1890.

"*Sixth.* That defendant Fanny A. V. Knight, as administratrix of the estate of D. B. Knight, deceased, is entitled to judgment against the plaintiff for one-half the amount found due from him to the

firm upon the accounting herein, from which shall be deducted the excess of his account over that of D. B. Knight's on January 30, 1886.

"*Seventh*. That said Allan Smith, as surviving partner, should account for one-half of all personal property now on hand, and of all notes and accounts still on hand and unpaid, as shown by the foregoing report, excepting the cattle notes, for which he shall account for the one-fourth.

"*Eighth*. That the defendants he required to convey by proper deed of conveyance the undivided one-half of lot eleven (11), in block sixty-seven (67), in Boone, Iowa, to the plaintiff, Allan Smith.

"*Ninth*. That Allan Smith is the owner of the undivided one-half of the real estate belonging to said firm, to wit, lots 12, 13 and 14, in block 67, and lots 6, 7 and 8, in block 54, in the city of Boone, Iowa; and the defendants, Fanny A. V. Knight, Harold Knight and Bertha Knight, are the owners each of the undivided one-half of said real estate.

"I therefore recommend that judgment be entered in favor of the defendant Fanny A. V. Knight, as administratrix of the estate of D. B. Knight, deceased, and against the plaintiff, Allan Smith, for the sum of four thousand, three hundred dollars and eighty cents, which shall be a lien upon the interest of said Allan Smith and the aforesaid real estate; that the said Allan Smith be required to account to the said administratrix for the one-half of all personal property and other assets of the late firm of Knight & Smith, now on hand; that judgment be rendered confirming the shares of plaintiff and defendants in the real estate as herein stated, and that partition thereof be made.

"Respectfully submitted,

"BEN. P. BIRDSALL, Referee."

Extended exceptions were filed to the report, upon the hearing of which certain additional items of credit

were given to the plaintiff, aggregating five hundred and fifty-five dollars and three cents, and, thus modified, the report was confirmed by the district court. The court then, "to the end that the partnership business be finally and fully adjusted," appointed Samuel L. Moore, of Boone, Iowa, a receiver "to take and assume charge and control of all the remaining property and assets of said firm." On the ninth day of February, 1891, the receiver filed in the district court his report, showing a net balance in his hands of eight thousand, one hundred and twenty-nine dollars and eighty-seven cents. In the district court of Boone county was pending a suit of Allan Smith against A. V. Knight, administratrix, *et al.*, heirs of D. B. Knight, deceased, being the parties in iterest in this suit, which suit was to obtain order for the sale of the real estate of Knight & Smith, and for general relief. On the eleventh day of November, 1890, the district court entered an order consolidating that case with this, and hence the two suits are united for disposition.

On the twelfth day of January, 1891, the plaintiff filed his supplemental bill for review and correction of former finding and judgment, and for general relief, and also a further report, as surviving partner, "touching said firm property, and receipts and disbursements and expenses in caring for said mill, elevators, and other property of said firm from the date of the report of the referee, Birdsall, to wit, April 15, 1890, up to the time the receiver took possession, October 7, 1890;" and also a "statement of the matters which entered into and affected his personal accounts" for the same time. On the ninth day of February, 1891, the cause was finally submitted to the district court, and the following, on this appeal, is the essential part of its decree:

"After a due consideration of said report, and being fully advised in the premises, the court finds that said report, showing a net amount in the receiver's

hands of $8,129.87, should be confirmed and approved, and said report is accordingly and is hereby approved and confirmed. Now, on the same day the cause comes on for hearing and trial, and, the parties appearing as before, thereupon the court, after due consideration of the records and evidence introduced by the parties, the findings reported by the referee, Hon. B. P. Birdsall, as modified and approved by the court under date of October 1, 1890, which report, as modified and approved, with the order of approval as entered thereon, is embodied as a part of this decree, reference being thereunto made, the reports of plaintiff as surviving partner, the report of S. L. Moore, receiver, the waiver filed by the defendant as to claim for rent of the mill property subsequent to April 15, 1891, and all other matters, records, and other evidence before the court material and competent to be considered in said cause, after the argument of the counsel, and after being fully advised in the premises, finds and determines that the issues involved between the parties are found in favor of the defendants. And on final accounting the plaintiff, Allan Smith, is indebted to the defendant, F. A. V. Knight, administratrix, in the sum of four thousand, two hundred and nineteen dollars and thirty-six cents. That the plaintiff is entitled to one-half the money shown in the referee's hands by his report, to wit, four thousand, sixty-four and ninety-three hundredths dollars ($4,064.93), and that the defendants, F. A. V. Knight, Bertha Knight, and Harold Knight, are each entitled to and own one-sixth of the money now in the receiver, S. L. Moore's, hands, to wit, to each the sum of one thousand, three hundred and fifty-four dollars and seventy-eight cents."

The foregoing presentation of the record brings us to the point where we may more intelligently consider the questions presented by counsel in argument.

I.   The question important and far reaching in the case is the provision in the contract of June 11, 1884, as to the interest to be allowed on the monthly balance of the respective partners.   By reference to the report of the referee it will be seen that he finds that the firm of Knight & Smith, from May 1, 1870, to January 1, 1880, paid to the banks of Boone interest at the rate of fifteen per cent. per annum.   His findings of facts further show that for that period the excess credits of Smith over Knight was such as to make the matter of the rate per cent. upon his credit balance quite important.   The legal conclusion of the referee is that "the allowance of interest upon the excess of monthly balances" prior to the date of the contract, "is without consideration, is inequitable, provides for usurious interest, and should not be enforced."   The district court adopted this view in its confirmation of the report.   This finding has reference to interest from the commencement of the partnership in 1869, to the making of the written contract June 11, 1884.   From the latter date interest has been allowed at the rate specified in the contract.

The first proposition for us to consider is, was there a consideration to support the promise to pay interest on the credit balances prior to the date of the contract.   An inspection of the contract indicates two purposes in its making:   *First*, an adjustment of accounts because of past transactions; and, *second*, some additional provisions for the future conduct of the business.   Nothing in the contract indicates the thought of a final adjustment or settlement.   It is plain from the terms of the contract that the parties intended to ascertain the actual property rights of each in the firm to the date of the settlement or inspection, to be made as soon as possible, and receive credit therefor on the books, which would be an accounting

1. PARTNERSHIP: right of partners to interest on excess of capital contributed: agreement without consideration.

as to past transactions, and the books would be the evidence of it. It would be, in effect, a rest in the business affairs of the firm, from which future accountings could be made. Nothing in the record indicates to us in any way that the agreement as to the future of the firm induced the agreement as to the mode of adjusting past transactions. The condition of the business, under the statement of facts leading to the agreement, was a sufficient inducement for the agreement as to terms of settlement, and the future of the firm certainly possessed every inducement necessary to the contract in regard thereto. The appellant's contention, therefore, that the agreement as to interest or existing accounts or balances has support, as to consideration, because of other parts of the agreement, is not sustained in the record.

To our minds, a proper position from which to view or determine the legal effect of the agreement to pay interest on the past balances would be to assume the contemplated settlement as final, a closing up of the partnership affairs. One or two facts should be settled in this connection. There is a claim that at the commencement of the partnership there was a verbal agreement for the payment of this interest on monthly balances. One witness gives testimony to that effect, but it is of his recollection of a conversation between the partners nearly twenty years before his testimony was taken. This testimony is, to our minds, quite conclusively overcome by the other facts in the record. The contract of June 11, 1884, contains recitals of the terms of the contract as originally made, and makes particular mention of the portions of the capital to be furnished by each. There is nothing to show that at that time there was an expectation that the capital would be furnished, except in equal amounts. To this may be added the fact that for fifteen years the business was carried on without a word

between the partners, or an entry on the books corroborative of such an understanding. It seems to us that, had the written contract in this particular been intended as a confirmation of an agreement as to interest of such long standing, it would, when stating other facts as a reason for making a written contract, have specified the fact of the oral agreement. The language of the contract indicates that the subject of interest on monthly balances was then first considered. It also conclusively appears that each of the partners, in placing money to his credit in the firm, placed it there as capital for the use of the firm, and not as a loan, or to create an indebtedness of the firm to him. This fact is evidenced by the written agreement wherein it speaks of the money furnished "being invested in the business."

From this standpoint we may consider the question presented in argument as to the legal effect of the written agreement to pay interest on past monthly balances. Having held that other provisions of the contract furnished no consideration for the promise to pay interest on past balances, we are to inquire if there is anything in the record to overcome the presumption of the law that the contract, because in writing, is supported by a consideration. Every fact which could operate as a consideration seems to be disclosed by the record.

It is urged that the agreement to pay this interest is mutual, being made without knowledge of who would be benefited by it, and that the promise of one is a consideration for the promise of another. We may be in better condition to consider the proposition by stating the rule as to what the obligations of the parties would have been in the absence of the written contract. Had they, under such circumstances, been settling the affairs of the partnership, it may be regarded as well settled, though perhaps not without

some conflict of authority, that neither could have demanded interest on his excessive monthly balances, nor on his excess of capital furnished. In Lindley on Partnership [2 Ed.], p. 389, the rule is stated as follows: "As a general rule, partners are not entitled to interest on their respective capitals, unless there is some agreement to that effect, or unless they have themselves been in the habit of charging such interest in their accounts; and, even where one partner has brought in his stipulated capital and the other has not, the former will not be entitled to interest on the winding up of the partnership, if it has not been previously charged and allowed in the accounts of the firm." The text has the support of a number of authorities cited. See *Clark v. Worden*, 10 Neb. 87, 4 N. W. Rep. 413. Mr. Justice STORY, in *Dexter v. Arnold*, 3 Mason, 284, states the rule in the following words: "Interest is not allowed upon partnership accounts generally, until after a balance is struck on a settlement between the partners, unless the parties have otherwise agreed or acted in their partnership concerns." *Day v. Lockwood*, 24 Conn. 185; *Godfrey v. White*, 43 Mich. 171, 5 N. W. Rep. 243; *Lee v. Lashbrooke*, 8 Dana, 214; *Prentice v. Elliott*, 72 Ga. 154.

In *Reynolds v. Mardis*, 17 Ala. 32, the syllabus indicates a different rule, and states it in these words: "When parties agree to invest equal amounts in their common business, and one advances a larger sum than the other, he is entitled upon settlement to an allowance of interest on the one-half of the excess so advanced by him from the date of the appropriation to the use of the firm." The case of *Clark v. Worden, supra*, comments upon the holding of the Alabama case, and doubts, at least, under the facts, if it was a case of partnership, saying: "Although the court treats this as a case of partnership, it certainly was not such in a general sense, but was more in the nature of a joint

investment of money to await natural increase and enhancement of the value of real estate.'' To avoid misapprehension, it may be well to state that the rule we announce is of general application. There are abundant exceptions to the rule, based upon agreements expressed, or deduced from a course of business indicating an understanding of the parties; but with rare exceptions is there an authority to be found justifying the payment of such interest in the absence of an agreement, expressed or implied.

We are, then, to the point that, without the written contract, no interest on the balances could be claimed, and from this situation we may consider the effect of the mutual promises. It is to be borne in mind that these promises or agreements were not dependent upon contingencies of the future, or the uncertainty of profits in contemplation, but an agreement based upon existing facts that were ascertainable and to be determined upon an inspection of the books. In the absence of the contract, the law fixed the rights of the parties upon the facts when determined. The district court estimated that by the agreement, if enforceable, the otherwise balance of eleven thousand dollars to the plaintiff's credit would be increased to over fifty thousand dollars. Here is an advance of nearly forty thousand dollars, and what is it for? The appellant says, for his promise that, if the inspection of the books should show a balance in Knight's favor, he should have the same advantage. Such a transaction does not invoke the rule of law that one promise is a consideration for another promise. In such case the transaction is an executory one, and the promises are such as, when performed, will come within the definition of a consideration as granting some right, interest, profit, or benefit to another, or assuming some obligation, responsibility, or loss. Neither party, in this case,

in a legal sense, furnished such a consideration to sustain his right to the marvelous advantage to result. This case, as to consideration, is not unlike the following: A and B, after an election, and before‏ the result was known, agree that, if C is elected, A shall have B's horse; if D is elected, B shall have A's horse. Is one promise a consideration for the other, so as to be enforceable? As much so, we think, as the promises in this case.

We have reserved for reference in this connection the case of *Kemmerer v. Kemmerer*, 85 Iowa, 193. The case was determined in this court in May, 1892. It supports the general rule we have announced, and has a direct bearing upon the particular point we are now considering. The issues involved a partnership accounting, and a question of interest upon past transactions of the firm. In the opinion it is said: "This interest the referee refused to allow, finding in effect that it was interest charged entirely upon past transactions, when there was no legal obligation to pay interest, and that the evidence as to the agreement between the defendants that said interest should be paid was conflicting. This finding was all right. There is nothing in the partnership contract providing for the payment of interest, and the agreement to pay it, based upon transactions then past, would amount to nothing more than a gift by these partners to the firm." The same is true in this case. The agreement to pay interest, where, by the law, no interest could be charged, was but a gift by one partner to the other, and, not being performed, it is not enforcable.

We are not differing materially as to the real purpose or motive for this particular feature of the contract from the appellant's view, for in argument it is said: "As has been seen, it was not an unlawful agreement to make, and each took his chances of what would be monthly fluctuating balances as the books then stood.

But when they had agreed to correct the books it would be still more uncertain what would be disclosed as to the monthly balances.. These balances would be fluctuating. Knight claimed they would be more often and more largely in his favor, and, hoping to get the best of the· bargain, provided, in consideration of Smith's promise to him, upon the basis of the same fluctuating balances, that the interest should be allowed as in the contract provided." The bargain was, then, to take chances upon what a computation in correction of the accounts would disclose, with a gain or loss to each partner, as the result should be in favor of or against his judgment. Every gambling enterprise is supported by the same consideration. The transaction, in this particular, was entirely without an element of business venture in its proper sense. Under the appellant's theory it was a speculation by each party upon the correctness of his judgment as to past occurrences. The district court concurred with the referee in the conclusion that the contract was not only without consideration to support it, but, because of its character, and the direful consequences to result, it was too inequitable to meet with favor at the hands of a court of equity. These conclusions are, to our mind, irresistible.

It is not important, in view of our holdings upon the other questions, that we should consider that of the contract being usurious.

II. D. B. Knight died January 25, 1886. The referee found that the plaintiff took possession of a 2. ——: use of firm property by surviving partner: liability for rent. mill belonging to the firm, and occupied it continuously until April 15, 1890, and enjoyed the benefit thereof, and charged to him in the accounting, as rent therefor, six thousand, four hundred and seventy-three dollars and fifty cents, being one hundred and twenty-five dollars per month. The appellant earnestly contends that this finding is

erroneous, and that the appellant, as a surviving partner, should not be charged with such rent, because the preservation of the estate of the firm demanded that he should take possession of the mill, and operate it, which he did without benefit to himself, and, in fact, at a loss. We are satisfied from the evidence, as were the referee and the district court, that the operation of the mill after the death of Knight was not for or on account of the firm, but for the plaintiff personally. Many of his doings are inconsistent with any different conclusion. It may be said in this connection that his management of the personal assets of the firm, under his doings as surviving partner, rendered it impossible for himself, or any other person after a short time, to know the extent of his liability as such surviving partner, and the conclusions as to such liability are but approximations. If they are erroneous, it is the result of his own mismanagement. With a proper inventory of all effects when he assumed his duties as surviving partner with a view to closing up the affairs of the firm, and a conduct of the business with that end in view, and on the account of the firm, instead of his personal account, an accurate accounting could have been had and the interests of all protected. The following from *Laswell v. Robbins*, 39 Ill. 209, is quite applicable to the facts of this case: "When the partnership terminated, plaintiff in error, if he had regarded the duties and obligations of a partner, instead of appropriating the property to his own use, would have made some disposition of it for the benefit of the members of the firm, or would, at least, have taken the necessary steps for a settlement. Property at the termination of the partnership belonged to the firm. If so, and the plaintiff has appropriated it to his own use, he must account for it on the settlement of the affairs of the partnership. It was then in his power to have had clear and satisfactory evidence of the articles

and their value on hand at the time the partnership terminated. It would have been attended with but little difficulty to have made an inventory and fixed the value; but, having failed to do so, the defendant in error not having the power to so do, he must establish his claim in the best mode he can; and if, in doing so, he has to prove facts from which presumptions have to be indulged in which plaintiff in error thinks overcharge him, he will have no right to complain if he has failed to preserve the evidence which it was his duty to obtain."

The rental value of the mill, as found by the referee, has full support in the testimony, and we see no reason why the conclusion should be disturbed.

III. The referee refused to allow the plaintiff compensation for his services in settling the partnership affairs, and of this complaint is made. The general rule is that compensation to a surviving partner for such service is not allowed. Many authorities sustain the rule, and, among them, *Starr v. Case*, 59 Iowa, 503. The reason of the rule is that the law enjoins such duty under the contract of partnership. See *Beatty v. Wray*, 57 Am. Dec. (Pa.) 677.

3. ——: settlement by surviving partner: compensation.

Prior to the death of Knight each partner drew from the firm one hundred dollars per month, and this fact is regarded by the appellant as implying an agreement for compensation. There being but two partners with equal interests, such a practice amounted simply to a division of profits to that extent. By what name it was called would make no difference. Nothing in the record shows that one partner, because of excessive service, was to receive more than the other, and the law, under the general rule, does not permit it. See *Beatty v. Wray*, 57 Am. Dec. 677. For such assistance as was necessary the plaintiff was entitled to an

allowance, and received it in the accounting made by
the referee.

IV. Numerous complaints are made as to specific
items of the accounting. These we can not profitably

4. ——: action consider in detail. They are questions of
for account-
ing: judgment fact to be determined from the testimony,.
on appeal. and that can not be set out. It is doubtful

if any two persons, upon separate examinations, would
reach the same conclusion on each and all of these
items. We have endeavored with care to know if the
result, as to the appellant, was sustained by the evi-
dence, and many days have been given to an under-
standing of this voluminous record. We observe but
a single item charged to the appellant that is without
sufficient support. Among the assets of the estate was
a house and lot rented to one Driscol, and there was an
unpaid balance for rent of two hundred and twelve
dollars, for which the appellant is made debtor. This
uncollected amount was by the appellant passed to the
receiver, and by him sold. This occurred, of course,
after the finding and report of the referee, but the con-
firmation of the report and the judgment as entered
includes this item. The ground of the appellees' con-
tention in support of the charge is that there is testi-
mony tending to show that the failure to collect this
rent was through the negligence of the appellant. We
think the testimony is insufficient to sustain the find-
ing, but this fact does not have the effect to modify the
decree in this court. We are also of the opinion that
in one or more particulars the appellees are erroneously
debited with items in excess of the one for two hundred
and twelve dollars. We instance the item known in
the record as for one thousand, five hundred and
eighty-one dollars and forty-one cents, credited to
Smith. It is a matter of doubt if the item was a
matter of partnership accounting, but, if so, under the
most favorable view of the evidence, the finding

involves an error against the appellees of four hundred and forty dollars and ninety cents, which more than overcomes the erroneous debit item to the appellant.

But in this connection it is urged that this finding against the appellees can not be considered, because they have not appealed; the thought being that only matters of complaint by the appellant are involved in the trial on appeal. On the other hand, it is contended by the appellees that the whole case is for trial anew, and that such a judgment should be entered as the law and the facts will warrant. Neither position, in our judgment, is correct. The appellees attach importance to the fact that in equity causes the trial is anew, and contend that it should be a trial of the whole case. On appeal in equity causes the trial is of the whole cause in so far as the appellate court is involved, but its province is not to reverse or modify judgments in favor of parties who are content with the judgment below, which fact is assumed in the absence of complaint by the party, and the legal mode of complaint is by appeal. Such a rule works no hardship, and we think it is a consistent rule of practice. *Hintrager v. Hennessy*, 46 Iowa, 600; *Devoe v. Hall*, 60 Iowa, 749; *Frost v. Parker*, 65 Iowa, 178, and *Huff v. Olmstead*, 67 Iowa, 598, are equity cases in which the rule has been announced, and the Reports contain other cases of both forms of action announcing the same rule. This appeal was taken in the light of these holdings, and they must be held as conclusive of the question.

As to the contention of the appellant that we can not consider anew findings of fact against the appellees by the court below, we must say that we are not aware that such a rule has ever been sustained or announced. In *Frost v. Parker*, *supra*, it was said that a party not appealing from a judgment "must be regarded as satisfied with it." In that case this court refused to modify a decree in favor of the party not

appealing, to which modification he would have been entitled on his own appeal. On the trial of an equity cause on appeal this court examines the entire record, to determine the decree that should be entered, and the findings of the district court are no limitation upon its course of procedure. It considers the case anew, and directs judgments in accord with its findings, except that, where one party indicates, by not appealling, that he is satisfied with the judgment, it will not be modified in his favor. If, in the judgment of this court, from an examination of the entire record, the decree below was correct, it will not reverse because of errors of the district court as to findings of particular facts. In *Alexander v. Buffington*, 66 Iowa, 360, it is said: "If there is a good reason for the support of the decree, it will not be reversed because it was based by the court below on a bad one." In *First Nat. Bank v. Wright*, 84 Iowa, 728, which was a law action, we held, as against the plaintiff, who had not appealed, that it could not urge as error a ruling against it by the district court, because no assignment of error brought it in question. In a supplemental opinion, on an application for a rehearing, we modified or changed the holding so as to permit matters of record to be urged by the appellee without assignment of error, for the purpose of protecting a judgment in its favor by showing that the errors assigned by the appellant were not prejudicial. That holding is in harmony with our views as expressed in this case.

These considerations lead us to a very satisfactory conclusion that the decree of the district court should be and is AFFIRMED.