A. C. BROWN, Respondent, v. MINNEAPOLIS, ST. PAUL, & SAULT STE. MARIE RAILWAY COMPANY, a Corporation, Appellant.

(180 N. W. 792.)

**Appeal and error — evidence that other trains did not signal at crossing held prejudicial in action for killing stock.**

This is an appeal from a judgment against the Director General of Railroads and the railway company for $500 and interest, as the value of four horses that were turned out on the prairies in January and February, 1918, and killed on a crossing by one of the defendant's trains. It is *held:*

(1) The admission of evidence to establish that other trains not shown to have been equipped as the train in question did not ring the bell or sound the whistle, upon approaching the crossing, was prejudicial error, requiring a reversal of the judgment.

Opinion filed November 13, 1920.

Appeal from the District Court of Richland County, Honorable *F. J. Graham,* Judge.

Reversed and new trial granted as to Director General.

*Wolfe & Schneller* (*John L. Erdall,* of counsel), for appellant.

When a prima facie case has been met by evidence which is not in conflict with material evidence, or with the circumstances surrounding the injury or killing, the presumption arising under the statute is eliminated, and it becomes incumbent upon the plaintiff to show actual negligence by a fair preponderance of the evidence.

Whether such presumption has been fully met and overcome by the defendant's evidence is, in the first instance, a question of law. Hodgins v. R. Co. 3 N. D. 382; Smith v. R. Co. 3 N. D. 17; Duncan v. R. Co. 17 N. D. 610.

*W. S. Lauder,* for respondent.

The question of contributory negligence, whether it be of a defendant or the alleged contributory negligence of the plaintiff, is primarily and generally a question of fact for the jury. The question becomes one of law, authorizing the withdrawal therefrom from the jury, only when but one conclusion can be drawn from the undisputed facts. Jackson v. Grand Forks, 24 N. D. 601; Clemens v. Royal Neighbors, 14 N. D.

116; Houghton Imp. Co. v. Vavrowski (N. D.) 125 N. W. 1024; Edwards v. Chicago & R. Co. 21 S. D. 504; Hall v. N. P. R. Co. 16 N. D. 60; Walkin v. Horswill (S. D.) 123 N. W. 668.

"Where the evidence is such that different conclusions might fairly be drawn the verdict of the jury is conclusive." Berry v. Chicago & R. Co. (S. D.) 124 N. W. 859; Bryant & Co. v. Arnold, 19 S. D. 106; Unzelmann v. Shelton, 19 S. D. 389; Comeau v. Hurley (S. D.) 123 N. W. 715.

ROBINSON, J.  This is an appeal from a judgment against the Director General of Railroads and the railroad company for $500 and interest, as the value of four poor, senseless horses that were turned out on the prairies in the zero months of January and February, 1918, to live or die, survive or perish. It was on a zero night in February, at a time when all good and valuable horses should have been at home and in bed, that the poor, senseless animals were killed. And, under the circumstances, who will blame the animals or reflect on their intelligence if they deliberately committed suicide by running across the railway in front of a train running at 50 miles an hour? All their troubles and starvation was ended in a moment.

The judgment is against the railway company and the Director General, and the appeal is only by the company, and yet before trial it was stipulated that the Director General should be substituted as defendant in lieu of the company. The verdict is for the plaintiff, but does not specify that it is against either defendant. For that reason alone, it seems the judgment should be reversed.

The complaint is based on negligence. It is for the negligent killing of the horses, and the statute makes the killing prima facie evidence of negligence. In the absence of any proof, except the killing, the law presumes negligence, but when the facts and circumstances are proven, then the presumption no longer prevails. Then the case must be decided on the evidence, and the burden of proof is on the plaintiff. At the time of the killing the train consisted of seven coaches. It was running northwest from Wyndmere on schedule time at about 50 miles an hour. It was a first-class train, and it was well equipped with all modern appliances and safeguards, and with a bell which was rung automatically and continuously when the train was in motion. By statute it is

provided that a bell, at least 30 pounds in weight, or a steam whistle, shall be placed on every locomotive engine, and shall be rung or the whistle blown continuously for eighty rods prior to any road crossing, under a penalty of $50 and all damages for any negligence. Comp. Laws, § 4642. The negligence imputed to the defendant is a failure to ring the bell continuously for 80 rods prior to the road crossing and a failure to keep a continuous watch for animals on the track. On these points the evidence seems to preponderate in favor of the defendant. The engineer swears that he had a good headlight and was careful to keep a lookout for animals on the track. Of course he could not be expected to keep his mind and his eyes at all times fixed on the track, as the monotony might drive him to insanity or insensibility. He testifies that on the train there was an automatic contrivance to keep the bell ringing while the train was in motion and that he did not turn it on and off,—and that part of the testimony is highly credible, as it was much easier to keep a continuous ringing than to turn it on and off every moment. To show that the ringing was not continuous, counsel for plaintiff stated on his argument: "I have ridden tens of thousands of miles on railway trains, and I never rode on a train where the bell was rung all the time. And you, gentlemen of the jury, never did and Mr. Wolfe never did." To that statement objection was promptly made, and it was withdrawn, and the court instructed the jury to disregard it except as it is brought out by the evidence in the case. The jurors were not told to entirely disregard the prejudicial statement, and even had they been so directed, the effect might not have been removed. The mind is not a machine to undo all impressions at the direction of a judge. The statement was probably true, though highly misleading and prejudicial, and it would naturally impress the mind of the jurors because the contrivance for ringing a bell is new and it is not used only on the mile a minute train. To prove that the bell did not ring continuously, two witnesses were called, who, against objection, testified that when working near the track in the daytime they did not hear the bell ringing at all, except once. But the fast train, when on schedule time, was not on the track in the daytime, and of course the other passenger trains did not have a continuous bell ringing. Hence the admission of such testimony was error. However, there is no evidence or presumption that the ringing of the bell would have frightened the horses away from the

track or from going upon the track. The evidence rather shows that, as the train approached, the horses were not on the track, but that the ringing of the bell and the noise of the train frightened them, and they attempted to run across the track. One horse was nearly across when struck; two horses were on the center of the track and one was just coming onto the track. Had the train passed without making any noise, the chances are that the horses would not have been killed or injured.

Of course the value of the horses was a material question. Elmer Brown, a son of the plaintiff, was called and testified to their value and condition. Then, on cross-examination, he was asked:

"Q. Had not the horses been permitted to run at large on the prairie for a greater part of the time during the winter before the killing?"

"Q. When did you see the horses last before the accident?"

"Q. Had you anything to do with the care of the horses?"

The court erred in sustaining an objection to those questions, as their manifest purpose was to show the competency of the witness and the value of the animals. Horses that are turned adrift on the prairie in the months of January and February to live or die, survive or perish, and to keep from freezing, are not like horses that are kept in a warm stable and fed hay and oats. Good, valuable horses are not kept in a cruel and careless manner, adrift on the prairie in January and February.

The majority of this court are of the opinion that prejudicial error occurred in the admission of testimony by witnesses that they did not hear the train bell ringing while working near the track. Although the parties stipulated before the trial that the Director General should be substituted as a defendant in this action, nevertheless, the judgment, as in fact entered pursuant to the verdict, was against both the railway company and the Director General. The appeal was argued on the merits. When, on oral argument, a member of this court suggested that the defendant railway company was really not a party, counsel for both sides immediately disclaimed any desire that the manner in which the verdict was returned, or the appeal taken, should, in any way, affect the consideration and determination of the merits of the appeal. In view of the manner in which the case was handled in both courts, we believe it would be unjust to treat the case as one against the Director General alone, and the appeal as one taken by the railway company from a judg-

ment entered against it through inadvertence. To so treat it would be to ignore the intention of the parties. The judgment and verdict should be construed as entered and as treated by the parties. As actually entered, the judgment is in such condition that its reversal as to one party should ordinarily occasion a reversal as to the other. See § 7841, Comp. Laws 1913; 3 C. J. 1007; 4 C. J. 1184, 1206. It is therefore ordered that the judgment be reversed, and a new trial granted to the Director General, and that the action be dismissed as to the railway company. All costs to abide the final determination of the case.

CHRISTIANSON, Ch. J., and BIRDZELL and BRONSON, JJ., concur.

GRACE, J. (dissenting). This action was commenced by the issuance of a summons dated the 25th day of February, 1919, and which was served on the defendant on the 26th. Plaintiff's complaint was served at the same time. It stated a cause of action against the defendant, based upon its careless and negligent operation of its locomotives, engines, and cars, by reason of which, at a certain railroad crossing on defendant's railway line, such engines and such locomotives and cars were run against, upon, and over certain horses, the property of plaintiff, of the alleged value of $650.

The defendant answered, and, among other defenses, interposed a general denial, and also the defense of contributory negligence, and, as a further defense, pleaded that its railway line was, on the 1st day of January, 1918, taken over by the Director General of Railways, pursuant to acts of Congress and proclamations of the President, and that the possession, use, control, and operation of it had been, since then, and then was being, exercised by such Director General.

Exhibits were attached to the answer, showing the proclamation of the President of December 26, 1917, relative to government control of railroads; and also an exhibit which is a copy of the proclamation of the President made on the 29th day of March, 1918, authorizing the Director General of Railroads to exercise powers conferred on the President by Congress; and copies of certain orders of the Director General were attached to the answer as exhibits. This answer was dated March 27, 1919, and was served on the plaintiff March 28, 1919.

On the 23d day of April, 1919, the following stipulation was entered

into, by and between plaintiff and defendant; it was in writing and signed by the plaintiff and defendant, by their respective counsel: "It is hereby stipulated and agreed, by and between the parties to the above-entitled action, and their respective attorneys, that the Director General of Railroads, operating the Minneapolis, St. Paul, & Sault Ste. Marie Railway Company, shall be substituted as defendant in place of the Minneapolis, St. Paul & Sault Ste. Marie Railway Company; that when said substitution is made, said action shall proceed to trial, the same to all intents and purposes as though the said Director General had been named as party defendant in the first instance."

The action did not come on for trial until January, 1920, nine months or more after the time of entering into the above stipulation. The result of the signing of the stipulation was to make the case one pending against the Director General, and not against the railroad company, and thereafter the railway company was not a party to the action.

At the time the verdict of the jury was returned, the only defendant in the case was the Director General, and this is true of the order for judgment, and the record so shows. The ordering of judgment against the railroad company, which was no longer a party to the action, was, no doubt, inadvertently done, and the same is true of the entry of judgment. The only judgment that could properly be entered in such case, upon the plaintiff recovering judgment, was one against the Director General, who was the only person then liable. Hence, the judgment could not be joint. The court had no right, jurisdiction, nor authority to enter a judgment against the defendant railway company; for it was not then a party to the action, and at no time during the trial, nor since, was it a party to the action, and its entry thereof was inadvertent. There was no joint liability of the Director General and the railway company, nor a joint and several liability, but only liability on the part of the Director General, the only defendant in the action at the time of the trial.

The judgment having been entered against both, and the defendant railway company having appealed, and the Director General not having appealed, and the railway company not being a party to the action at the time of the trial, or the entry of the judgment, the judgment should be reversed and dismissed as to it, and affirmed as to the Director General.

If there were any reversible error in the record, by reason of receiving incompetent testimony, which might have prejudiced the jury, as this case now stands, that would be immaterial, as the only party whom it could affect has not appealed, and therefore is not in position to assert error; and, as the case is properly dismissed against the railroad company, it cannot be affected by such error, if any were committed.