Ottumwa Boiler Works et al., Appellees, v. M. J. O'Meara & Son (and other cases consolidated therewith); Southern Surety Company, Appellant.

No. 38448.

April 5, 1929.

*Thomas A. Goodson* and *Thomas J. Guthrie*, for appellant.

*Oliver & Oliver* and *M. A. Roberts*, for M. J. O'Meara & Son.

*H. C. & H. C. Taylor*, for National Bank of Bloomfield and Hercules Manufacturing Company.

*Jaques, Tisdale & Jaques*, for Ottumwa Iron Works.

*John F. Scarborough*, for J. P. Toombs Estate.

*Verne J. Schlegel* and *E. Rominger*, for all other claimants.

FAVILLE, J.—I.   The National Bank of Bloomfield has filed in this court a motion for a decree, to which objections and a resistance have been filed, and certain amendments to the tendered decree have been proposed.   A brief review of the situation presented is necessary.   O'Meara & Son were contractors for the construction of certain drainage districts.   The Southern Surety Company was surety on the bond of said contractors.   O'Meara & Son failed in performing their contracts, and the work was taken over by the Southern Surety Company and completed.   On August 4, 1924, the Ottumwa Boiler Works filed a petition at law, claiming that O'Meara & Son were indebted to them, and praying for a writ of attachment.   On September 19, 1924, the National Bank of Bloomfield commenced a similar action against O'Meara & Son.   On September 20, 1924, the Hercules Manufacturing Company filed a similar petition.   Numerous claimants filed claims with the county auditor of Davis County against the fund due to the contractors, but did not institute suit.   On May 28, 1925, the Ottumwa Boiler Works filed, in the action commenced by it, a motion to transfer the cause to equity and to interplead the claimants.   The said motion alleged:

"That the National Bank of Bloomfield, the London Guarantee and Accident Co., Ltd., Cooper & Son, Hercules Mfg. Co., and C. O. Neice, have all filed suits of attachment in the district court, claiming the funds or a portion thereof in the hands of Davis County, Iowa, or the Wycondah and Fox River Drainage Districts.   That said suits are pending at this time in this court, and are similar actions to the above entitled cause; and before it

can be determined who is entitled to priority as to said funds, it will be necessary to consider all of said claims.

"That there are several attachment suits filed in the justice court, and that judgment has been rendered therein against M. J. O'Meara & Son; but from the nature of this fund, because of numerous claims filed by attachment and claims filed against this fund as claims for labor and material, it was impossible to determine the priority of said claims without having all of said claimants in court.

"That there are a large number of claimants that have filed claims against the final estimate of the said contractors, M. J. O'Meara & Son, and against the said contractors' bond, as by statute provided in the case of public improvements, and that, because of that fact, it will be necessary to consider said claims, to determine the priority of the same, before the funds in the hands of the county or drainage board can safely be distributed to any of the defendants or any of said claimants with safety. * * *

"That all of said claimants are proper parties and necessary parties, as hereinbefore set forth, and that the consolidation of said claims will greatly expedite matters in the furtherance of justice, and will avoid a multiplicity of suits.

"That this plaintiff is entitled to an order of this court to transfer said cause to equity and interplead said above mentioned claimants and prescribing the time of their appearance and notice to be served thereon."

On May 28, 1925, the court made an order in said matter, as follows:

"Be it remembered that, on this the 28th day of May, 1925, it being the 22nd judicial day of the May term of the district court of Davis County, Iowa, the plaintiff appearing in open court by their attorney, Verne J. Schlegel, and having filed their motion for the transfer of the above-entitled cause to the equity docket for trial and appearances, and the court being fully advised in the premises, it is ordered that Law No. 6758, Law No. 6780, Law No. 6795, Law No. 6796, Law No. 6797, Law. No. 6798, and Law No. 6809, are consolidated and transferred to the equity docket for trial and determination.

"It is further ordered by the court that all parties interested

be made parties to this action, and actions as hereinbefore ordered consolidated, and that they be notified to appear and plead in said consolidated cause and action on or before the second day of the October term, 1925, of the Davis County district court, said court convening on October 5th, 1925. And the following named parties are hereby ordered to appear and plead in said cause on or before said date. It is further ordered by the court that the original notice be served, as provided by statute, upon the following named corporations, partnerships, and parties having claims against Wycondah District No. 1 and Fox River Drainage District No. 3, to wit:''

A list of some thirty-two claimants was named. The various claimants appeared in said action, and set up their respective claims, and extensive and voluminous pleadings were had. The contractors likewise appeared. On May 3, 1926, the court rendered findings and a decree. The said findings and decree contain the following recital:

''It was agreed in open court by and between all of the parties above named that said causes were to be submitted to be determined in vacation, and decree entered in vacation with the same force and effect as if entered in term time. All of the other causes and parties which were originally consolidated with these causes and which are not named above were dismissed or withdrawn, as shown by pleadings in this cause, and were not considered by the court.''

The court then proceeds to make a finding as to various claims, and holds that certain claims were lienable and certain other claims were not lienable. Respecting the claims of the Southern Surety Company and the National Bank of Bloomfield under certain assignments, the court held that the assignment to the National Bank of Bloomfield was prior and superior to the assignment to the Southern Surety Company. The court established certain claims against the contractors and the Southern Surety Company. As to certain claims, the court decreed that judgment be rendered therefor in favor of the claimants and against the contractors, and decreed that each of said judgments and sums be established as a lien against the fund in the hands of the auditor. The court also ordered and decreed that the

claim of the National Bank of Bloomfield be established as a lien upon the funds in the hands of the auditor; and it was decreed that, after payment of judgment and costs, the balance was to be credited on the judgment in favor of the Southern Surety Company and against O'Meara. The Southern Surety Company alone appealed to this court, all of the parties being served with notice of said appeal. The various claimants appeared in this court and submitted arguments. The cause was determined in this court by opinion rendered April 3, 1928, and reported in 206 Iowa 577. We held that the assignment of the Southern Surety Company was superior to the assignment to the National Bank of Bloomfield.

The first error relied upon for reversal, as urged by the Southern Surety Company, involved the question of the lienability of certain claims that had been established as liens by the trial court. These were the claims of J. T. Tunnell, Centerville Foundry & Manufacturing Company, Ottumwa Boiler Works, Ottumwa Box Car Loader Company, Ottumwa Iron Works, J. Rosenbaum & Son, Minnie Toombs, administratrix, and Hercules Manufacturing Company. The lienability of these claims was exhaustively argued in this court by the several claimants. We held that each of said claims was not lienable.

One important question presented on this motion for a decree arises between the above-named claimants and the National Bank of Bloomfield. In brief, these claimants contend that their claims were established as liens against the drainage funds in the court below, and, being so established, they were necessarily ahead of the assignment of the funds to the National Bank of Bloomfield. Their contention is that, even though we have held said claims not to be lienable on this appeal as against the Southern Surety Company, the question is only determined here as between said claimants and the appellant Southern Surety Company, and that their position and standing as lienable claimants as against the National Bank of Bloomfield have not been affected by the appeal. In other words, the said claimants contend that, while their claims may not be lienable as a matter of law, under our holding, as against the Southern Surety Company, which appealed, yet they have not lost their status as being lienable so far as the National Bank of Bloomfield is concerned, because it has not appealed. The trial court decreed that the National Bank

of Bloomfield had a valid assignment of the fund, subject to lienable claims. The Southern Surety Company contended that it had an assignment of the fund superior to the assignment to the National Bank of Bloomfield, and subject only to claims properly lienable.

When the Southern Surety Company appealed, it not only raised the question of its claimed superiority to the assignment of the National Bank of Bloomfield, but also contended that said claims were not lienable, and hence were inferior to its assignment. This contention we sustained as to certain claims which had been established as lienable by the court below. How does the matter then stand, as between the claimants whose claims we thus held are not lienable and the National Bank of Bloomfield under its assignment?

The National Bank of Bloomfield did not appeal. It contends that the decree of the trial court was favorable to it, and hence there was nothing from which it could appeal. True, the trial court established the claim of the National Bank of Bloomfield as superior to that of the Southern Surety Company, but nevertheless it was subject to the lienable claims as established by the decree of the trial court. The National Bank of Bloomfield could have appealed from so much of the decree as established certain claims as lienable, and hence superior to its assignment. Since it has not done so, can we, on this appeal by the Southern Surety Company, hold said claims not to be superior to the assignment of the National Bank of Bloomfield also? The National Bank of Bloomfield might have admitted of record that a certain claim was lienable. This would establish its status as to said bank, but not as to the Southern Surety Company, which was contesting its lienability.

It is strenuously urged that, the appeal being in equity, the entire case is here for disposal de novo, and that we not only can, but should, determine the rights of all parties, regardless of which party took the appeal.

The National Bank of Bloomfield contends that, on this appeal, we are in a position to correct all errors, and therefore can determine, as between it and the several claimants, the question of lienability of said claims. State v. Consolidated Ind. Sch. Dist., 188 Iowa 959, does not lay down any such rule. We therein said:

"The successful party may, without appealing or assigning errors, save the judgment by showing that errors were committed against him below which, if corrected, will make the result reached below a right result."

It is obvious that this rule would not avail the National Bank of Bloomfield in the instant case. It is now contending that the ruling of the court below as to said claims was *erroneous,* and is not seeking to show errors committed below against it which, if corrected, will make the result reached below a *right* result. In order to correct the errors against the National Bank of Bloomfield that were committed by the trial court, we would have to change entirely the result that was reached below. This is not a case where error against an appellee is shown to be harmless because of an error committed against the appellant which, in a certain sense, offsets it, as in *Vorhees v. Arnold,* 108 Iowa 77; *Kelso v. Wright,* 110 Iowa 560; and *Ford v. Dilley,* 174 Iowa 243.

In *Smith v. Knight,* 88 Iowa 257, at 279, we said:

"But in this connection it is urged that this finding against the appellees cannot be considered, because they have not appealed; the thought being that only matters of complaint by the appellant are involved in the trial on appeal. On the other hand, it is contended by the appellees that the whole case is for trial anew, and that such judgment should be entered as the law and the facts will warrant. Neither position, in our judgment, is correct. The appellees attach importance to the fact that in equity causes the trial is anew, and contend that it should be a trial of the whole case. On appeal in equity causes, the trial is of the whole cause, in so far as the appellate court is involved, but its province is not to reverse or modify judgments in favor of parties who are content with the judgment below, which fact is assumed, in the absence of complaint by the party, and the legal mode of complaint is by appeal. Such a rule works no hardship, and we think it is a consistent rule of practice. *Hintrager v. Hennessy,* 46 Iowa 600; *Devoe v. Hall,* 60 Iowa 749; *Frost v. Parker,* 65 Iowa 178; and *Huff v. Olmstead,* 67 Iowa 598, are equity cases in which the rule has been announced, and the Reports contain other cases of both forms of action announcing the same rule.

This appeal was taken in the light of these holdings, and they must be held as conclusive of the question."

See, also, *Boatwright v. American Life Ins. Co.*, 191 Iowa 253.

We reach the conclusion that the National Bank of Bloomfield, not having appealed, is not entitled in this court to a decree more favorable than that which it obtained in the court below; or, in other words, as to said National Bank of Bloomfield, the trial court having established certain claims as being lienable, and therefore superior to the claim of the said National Bank of Bloomfield, and said decree not having been appealed from by said bank, we cannot, as between said parties, adjudicate the question of the lienability of said claims; and the decree as to said matters, as between said parties, must stand as in the trial court.

II. The appellant, by objections to the proposed decree, now insists that it is entitled to claim the item of $2,292.11 known as the Power-Penn Oil Company claim, and the item of $480 known as the Monighan Machine Company claim. Both of these items are considered in the original opinion, and the decree must conform to the pronouncement therein made.

III. The costs in the trial court were taxed one half against the Southern Surety Company and one half against the contractors O'Meara & Son. The decree of the trial court in this respect will remain unchanged. The costs in this court will be assessed one third thereof to the Southern Surety Company, one third thereof to the National Bank of Bloomfield, and one third thereof to Ottumwa Iron Works, Ottumwa Boiler Works, Ottumwa Box Car Loader Company, Centerville Foundry & Manufacturing Company, Rosenbaum & Son, Hercules Manufacturing Company, Minnie Toombs, administratrix, J. T. Tunnell, Newton & Lang Motor Company, W. C. Swift, C. M. Buckles, and Dr. A. M. McPhail, claimants, in the amount that the claim allowed to each of said claimants bears to the amount of one third of the costs in this court.

The motion for a decree is overruled, with leave to any party to this appeal to present a decree in accordance with this opinion.—*Motion overruled.*

88

ALBERT, C. J., and STEVENS, DE GRAFF, KINDIG, and WAGNER, JJ., concur.

MORLING and EVANS, JJ., dissent.

MORLING, J. (dissenting).—Motion is now made for decree in this court pursuant to opinion filed, reported in 206 Iowa 577, where the facts and conclusions of the court thereon may be found. For present purposes, it is sufficient to say that O'Meara & Son were contractors for the construction of drainage improvements. The Southern Surety Company was the surety on their bonds. The contractors, in the prosecution of the work, incurred numerous obligations, for which claims for liens were filed with the county auditor. The contractors borrowed money of the National Bank of Bloomfield, to secure which they assigned to the bank their interest in the contract price. The contractors failed to perform their contract, and the work was taken over by the surety, the Southern Surety Company. Assignment of the contract price for the security of the surety company was made to it, antedating, in fact, that to the Bloomfield bank. The Bloomfield bank, however, claimed priority, for want of notice of the previous assignment to the surety company. Numerous suits against the contractors to recover on these various debts incurred by them and to subject to the satisfaction thereof the funds of the drainage district which were liable for the contract price of the work were brought. These were all consolidated into one suit, tried and determined as such in the district court, and appealed to and determined by this court. The issue between the Southern Surety Company and the Bloomfield bank was one of priority. The issues with the claimants for liens were whether the claims were lienable. The district court, as between the surety company and the Bloomfield bank, gave priority to the Bloomfield bank. On the issues with the claimants for liens, the district court (so far as we are at present concerned) held that the debts to the lien claimants were lienable, and gave the claimants liens on the funds. These liens, of course, took priority over both assignments of the fund, both over that to the surety company and that to the Bloomfield bank. The surety company appealed. The bank did not appeal. This court held, as between the Southern Surety Company and the Bloomfield bank, that the assignment to the Southern Surety Company had priority over

that to the bank. As to the lien claimants, this court held that the debts to them were not lienable. This worked a reversal; and the question now is whether the reversal of the decision in the lower court that debts to claimants were lienable, and that claimants, therefore, were, to the extent of their claims, entitled to the fund in question, inures to the benefit of the Bloomfield bank, inasmuch as it did not appeal. Stated otherwise, Is the judgment in the district court establishing subcontractors' liens still in force and operative as to the Bloomfield bank, notwithstanding the adjudication on the appeal that the claimants had no lien upon, and therefore no interest in, the fund?

The case is in equity. So far as we are now concerned, the subject-matter of the litigation is the fund. The fund was brought into the jurisdiction of the district court, for the purpose of determining the property rights of the various claimants in it. The end sought was a determination of the conflicting claims to property rights and interests in these particular funds. That was the subject of the litigation. This general statement should be modified to this extent: As between the surety company and the bank, the question involved was one of priority. Their property rights in the funds, subject to the asserted superior rights of lien claimants and subject to the determination of priority as between them, are not questioned. Both of them denied, however, the alleged property rights of the lien claimants, and contested them. This contest was not waged on grounds applicable to the bank and the surety company severally, but upon the common ground that the lien claimants had no title. The funds in the first instance belonged to the contractors. All claimants were under the necessity of deraigning title from the contractors. The bank and the surety company had assignments from the contractors. They, therefore, *prima facie* had title. The lien claimants were under the necessity of proving the incurring of the debts by the contractors to them, the nature of the debts, for what incurred, and that the indebtedness was of the kind that entitled claimants to a lien upon the funds against the owners. Here but one ultimate question was involved. Did the claimants have a lien upon the fund? That question was not personal to the surety company or to the bank. The surety company and the bank (barring the result of the determination of priority between them) had identically the same interest in the

same question; they had identically the same property right in hostility to the lien claimant. If the claimants had no lien, they were the owners of the fund, and the only question remaining was that of priority between them. The decree of the trial court (barring the question of priority between them) affected them equally and inseparably upon the identical question involved, upon identical rights claimed, and on identical interests. It could not possibly be held by the lower court that, on the issues involved, the claims were lienable as to the surety company and not lienable as to the bank, or vice versa. The claims were either lienable or not lienable as an entirety, as a simple right of property, regardless of the nature of interests of any other claimants to the property. The decree establishing their claims as liens was single and entire. It was founded upon their assertion of a property right good as against the world.

The cause was removed to this court. The district court lost jurisdiction, and by appeal the case was brought here. While here, and up to the time of the entry of the decree which the parties elected to have entered here, the cause is pending exclusively in this court, and this court alone has jurisdiction. *Dunton v. McCook,* 120 Iowa 444; *Shors v. Shors,* 133 Iowa 22. The judgment on the question of the existence or nonexistence of property right of the lien claimant in the fund is necessarily entire. It is inconceivable that the same judgment may find that the claimant did have and did not have a property right in the fund for the single, identical thing or cause involved. It is conceivable that some question such as one of notice, estoppel, or waiver might have been involved that would apply with varying force to various adverse claimants, but no such question was involved. There were not, as to this matter, distinct and separate or several judgments, founded on several or distinct rights or claims of different parties. We repeat: The thing involved was the claimants' asserted property right in the fund, good as against the world. Our judgment is that the claimants have not a property right. They are here asserting liens. We hold that they have not liens. In that condition, the judgment is entire. The reversal must be total. The claimant, having failed against one, on grounds common to all, fails against all. The reversal inures to the benefit of those who do not appeal, as well as to the benefit of those who do appeal. *Cavender v. Heirs of Smith,* 5

Iowa (Clarke) 157; *Byington v. Stone,* 51 Iowa 317, 320; *Kennan v. Smith,* 115 Wis. 463 (91 N. W. 986); *Altman v. Hofeller,* 152 N. Y. 498 (46 N. E. 961, 964); *Shelley's Estate,* 288 Pa. St. 11 (135 Atl. 740); *Merrifield v. Western Cottage P. & O. Co.,* 238 Ill. 526 (87 N. E. 379); *In re Accounting of Union Trust Co.,* 219 N. Y. 537 (114 N. E. 1048); *Kremer v. Haynie,* 67 Tex. 450 (3 S. W. 676); *Buell Planing Mill Corp. v. Bullard* (Tex. Civ. App.), 189 S. W. 776; *Closner & Sprague v. Acker* (Tex. Civ. App.), 200 S. W. 421; *Reeves v. McCracken,* 103 Tex. 416 (128 S. W. 895); *Buskirk v. Musick,* 100 W. Va. 247 (130 S. E. 435); *St. John v. Andrews Institute for Girls,* 192 N. Y. 382 (85 N. E. 143); 3 Corpus Juris 1007, 1260; 4 Corpus Juris 1114, 1182, 1184, 1206; *Brown v. Minneapolis, St. P. & S. S. M. R. Co.,* 46 N. D. 582 (180 N. W. 792); *Morrison v. Stoner,* 7 Iowa 492; *Tate v. Goode,* 135 Ga. 738 (70 S. E. 571, 33 L. R. A. [N. S.] 310). It may be said, as applied to this case, that the decree rendered in this court establishes the status of the claims in question as nonlienable claims. In *Morrison v. Stoner,* 7 Iowa 492, it is said:

"By the common law, when the makers of a joint contract were sued, the plaintiff must obtain judgment against all, or against none. The spirit of this rule still pervades the law to a greater or less extent. Thus, if one defendant pleads a defense which goes to the substance of the contract, it must, of course, inure to the benefit of the others. So, if his defense is to a part of the contract, but wholly destroys that portion as a payment of part. There may be cases where the plaintiff may take judgment against one for the whole of the contract. * * * But in the case at bar, both contractors are in court. If the one pleads a matter which goes to the validity of the contract, or which is a defense for both, in its nature, on the whole or a part, and succeeds, the books hold that the other, even though in default, takes the benefit of it. * * * The judgment, if against both, must be joint. It would be absurd to render judgment against one for one amount, and against the other for another amount, just as it would if one pleaded payment of part."

Of course, this case is not one of joint liability; but the rationale of the rule, it seems to me, is that the final adjudication of the status or condition of things litigated, whether the final

adjudication is in the trial or appellate court, determines, for all the purposes of the action and of all the rights and interests there litigated, such status or condition, regardless of the position of the parties in the pleadings or in the proceedings.

In 2 Ruling Case Law 269 it is said:

"Under the rule established by the practice and decisions of some courts, however, it is held that while, in those cases where the parties appealing and those not appealing stand upon the same ground, and their rights are involved in the same question, and equally affected by the same decree or judgment, the appellate court will consider the whole case, and settle the rights of the parties not appealing, as well as of those who bring up their case by appeal, yet, where the parties stand upon distinct and unconnected grounds, where their rights are separate and not equally affected by the same decree or judgment, then the appeal will not bring up for adjudication the rights or claims of the others."

In *Tate v. Goode*, 135 Ga. 738 (33 L. R. A. [N. S.] 310, 314), it is said:

"It will be observed from the statement of facts that the grounds of the demurrer went to the right of the plaintiff to maintain his cause of action, and were common to all the defendants. The trial court was called upon to adjudicate, and did erroneously adjudicate, that the plaintiff had such title as could be asserted against all the defendants as residuary devisees under the will of the common propositus. If the trial court in the first instance had sustained the demurrer, that judgment would have inured to the benefit of all the defendants; because it is a general rule that, if one defendant pleads matter whereby it appears that the plaintiff has no cause of action against any defendant, and obtains a verdict, the plaintiff is not entitled to judgment against a defendant who has defaulted. *Biggs v. Benger and Greenfield*, 2 Ld. Raymond [K. B.] 1372; *Marler v. Ayliffe*, Cro. Jac. [K. B.] 134; *State v. Gibson*, 21 Ark. 140; *Bowman v. Noyes*, 12 N. H. 302; *Adderton v. Collier*, 32 Mo. 507; *Morrison v. Stoner*, 7 Ia. 493. When the trial court erroneously overrules a demurrer interposed by some of the defendants, which goes to the very vitals of the plaintiff's case, and the parties excepting and those

not excepting stand upon the same ground, and their rights are involved in the same question, and equally affected by the same decree or judgment, the judgment of reversal will operate in favor of all the defendants. *Willie v. Thomas,* 22 Tex. 175; *Walker v. Page,* 21 Gratt. 636; *Tod v. Stambaugh,* 37 Ohio St. 469. The adjudication by this court was that, under the allegations of the petition, the plaintiff had no other title than that of a tenant *per autre vie,*—that is, for the life of the surviving devisee, A,— and was not entitled to maintain the action against the residuary devisees of the testator, whom the defendants were alleged to be. [*Satterfield v. Tate*], 132 Ga. 256. So that the judgment of this court operates as a reversal of the decree as to all the parties to the case.''

*Smith v. Knight,* 88 Iowa 257, cited in the majority opinion, was an action for settlement of partnership accounts. Some of the items claimed by the defendant adversely to the plaintiff were (it was alleged) not sustained by the evidence. Those items, however, did not go to the very foundation, the life, of the plaintiff's case; whereas, in the case now before us, the adjudication goes to the very existence of any right in the lien claimants against anybody. It was held that they had no right in the property; and this adjudication, from its very nature, was against the whole world.

*Soodhalter v. Reliance Coal Co.,* 203 Iowa 688, where it is held that the appellees, by failing to appeal, are concluded by the decree establishing labor claims and fixing their character, is in harmony with my conclusion here; for there the labor claims in controversy were established in this court. This conclusion is also in harmony with the statute (Code of 1927, Section 12835) :

''Coparties, refusing to join in an appeal, cannot afterwards appeal, or derive any benefit therefrom, unless from the necessity of the case, but they shall be held to have joined, and be liable for their proportion of the costs, unless they appear and object thereto.''

Furthermore, the decree as entered in the trial court may reasonably be assumed to have protected the bank to its satisfaction. As it then stood, modification of it by denying the claims for liens would add nothing to its practical value. The bank

would not serve its interest by prosecuting an appeal. An appeal by the surety company might be taken so late as to preclude the possibility of a cross-appeal by the bank. It would be a harsh rule that would require the bank, under those circumstances, to appeal, or take the risk of losing both the existing benefit and the benefit of changes made on appeal by other parties. The bank is prejudiced, not by the judgment as rendered in the trial court, but by its disturbance on the appeal taken by the surety company. The bank's acquiescence in the judgment was in the judgment as it was rendered in the trial court, and as it would be if affirmed. Its acquiescence was not in the prejudicial elements of the judgment in the trial court, without its offsetting benefits. Its acquiescence was not in the different judgment rendered in this court, which becomes prejudicial only by denying to it the benefits of the judgment as here rendered. If a judgment which is satisfactory to one party is so disturbed on appeal by another party as to become unsatisfactory, and the party not appealing is compelled to submit to the changes which are to his prejudice, he ought, in common justice, to be entitled to the benefit of the changes which are in his favor, whether he has appealed or not.

The majority holding makes it incumbent on a party, in every case where reversal or modification in this court as to some of the other parties or of the questions involved may be final, to take a cross-appeal, though the judgment of the trial court is entirely in his favor.

EVANS, J., concurs in this dissent.